THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-cv-649

| | |
|---|---|
| PNHC, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>FREEUS, LLC,<br><br>           Defendant. | **FIRST AMENDED COMPLAINT** |

Plaintiff PNHC, LLC ("Plaintiff" or "PNHC"), by and through undersigned counsel and for its first amended complaint against Defendant Freeus, LLC ("Defendant" or "Freeus"), alleges and says as follows:

1. Plaintiff PNHC is a limited liability corporation duly organized and existing under the laws of the State of North Carolina. PNHC's principal place of business is located in Rolesville, Wake County, North Carolina.

2. Defendant Freeus, upon information and belief, is a limited liability corporation duly organized and existing under the laws of the State of Utah. Freeus' principal place of business is located in Ogden, Weber County, Utah. Defendant Freeus is authorized to do business and does do business in North Carolina, including, upon information and belief, Wake County.

3. Subject matter jurisdiction is founded on diversity of citizenship, § 1332 of the Judicial Code (28 U.S.C. § 1332).

4. Venue is conferred by § 1391(a)(1) and (2) of the Judicial Code (28 U.S.C. § 1391(a)).

5. This action is brought within all applicable statutes of limitations and is otherwise timely and proper. All conditions precedent to this action have been met and satisfied.

**FACTS**

6. Plaintiff PNHC and its predecessor in interest, Medical Life Alarm, LLC ("Medical Life Alarm"), through their members and managers, act as sales representatives for various manufacturers and wholesalers.

7. Defendant Freeus is a wholesale provider of two-way voice mobile personal emergency response systems ("mPERS"). mPERS products are compact, self-contained devices that are worn generally by seniors on a lanyard or keychain or carried in a pocket, and provide two-way voice communication with emergency care specialists.

8. On or about August 21, 2013, Medical Life Alarm entered into a Sales Representative Agreement ("SRA") with Securus, Inc. ("Securus"), the predecessor in interest to Defendant Freeus. Pursuant to the SRA, Medical Life Alarm agreed to act as a sales representative for Securus in the sale of Securus' mPERS products. In return, Securus agreed to pay to Medical Life Alarm a commission of $10.00 for every mPERS unit sold by Medical Life Alarm.

9. At or about that same time, Medical Life Alarm introduced Securus to Life Protect 24/7, Inc. ("Life Protect"), a potential purchaser of mPERS products.

10. Medical Life Alarm negotiated the terms and conditions of a Dealer Program Agreement ("Dealer Agreement") between Securus and Life Protect pursuant to which Life Protect would purchase mPERS products from Securus. Securus and Life Protect executed the Dealer Agreement on or about August 28, 2013.

2

11. The August 28, 2013 Dealer Agreement required Life Protect to utilize with each mPERS unit provided under the agreement Securus' emergency call center and monitoring services. In addition to paying Securus for each mPERS unit provided, Life Protect was obligated to pay a monthly service fee per unit for the required monitoring services.

12. Thereafter, Life Protect purchased mPERS products from and paid the monthly monitoring service fee to Securus pursuant to the terms of the August 28, 2013 Dealer Agreement. Securus paid the required commissions due to Medical Life Alarm pursuant to the terms of the August 21, 2013 SRA.

13. In or about May 2014, an amendment to the Dealer Agreement between Securus and Life Protect was negotiated setting out a new rate structure for the mPERS products purchased by Life Protect and a new fee structure for the monthly monitoring services. On June 6, 2014, Securus and Life Protect executed Amendment Number One to the August 28, 2013 Dealer Agreement. Thereafter, Life Protect purchased mPERS products from and paid the monthly monitoring service fees to Securus pursuant to the terms of the August 28, 2013 Dealer Agreement, as amended on June 6, 2014, and Securus continued to pay the commissions due to Medical Life Alarm on those sales pursuant to the terms of the August 21, 2013 SRA.

14. In or about February 2015, Defendant Freeus purchased the mPERS business from Securus, which included the August 28, 2013 Dealer Agreement between Securus and Life Protect, as amended June 6, 2014, and the August 21, 2013 SRA between Securus and Medical Life Alarm.

15. Following the purchase of Securus' mPERS business by Freeus, Medical Life Alarm (and later PNHC), acting on behalf of Freeus, entered into negotiations with Life Protect with regard to a second amendment to the Dealer Agreement between Securus/Freeus and Life

3

Protect for a new rate structure for the mPERS products purchased by Life Protect and a new fee structure for the monthly monitoring services. These negotiations specifically included discussions concerning the purchase price for Freeus' expected 3G mPERS product.

16. At or about that same time, Medical Life Alarm/PNHC and Freeus began negotiations over a new agreement for Freeus' payment of commissions to Medical Life Alarm/PNHC on Freeus' provision of mPERS products to Life Protect, including Freeus' current eResponder (2G) and planned 3G mPERS products.

17. In March 2015, Freeus and Medical Life Alarm/PNHC reached an agreement (the "Commissions Agreement"), pursuant to which Freeus, in return for Medical Life Alarm/PNHC's assistance in negotiating a second amendment to the August 28, 2013 Dealer Agreement, would pay to Medical Life Alarm/PNHC a $10.00 commission for every 2G mPERS unit (eResponder) sold to Life Protect. In addition, Freeus would pay a $10.00 commission for every 3G mPERS unit sold to Life Protect, as long as the sales price of the 3G unit was greater than $100.00. If the sales price was less than $100.00, the commission would be reduced accordingly. All commissions on sales of mPERS products to Life Protect were capped at $250,000.00 per calendar year. Commissions would be paid for 3 years. Freeus and Medical Life Alarm/PNHC specifically agreed that Medical Life Alarm/PNHC would be involved in all future discussions and negotiations between Freeus and Life Protect with regard to Life Protect obtaining mPERS units from Freeus.

18. On or about March 19, 2015, Freeus and Life Protect executed Amendment Number Two to the August 28, 2013 Dealer Program Agreement, as amended June 6, 2014. Amendment Number Two included a new rate structure for the mPERS products to be purchased by Life Protect and a new fee structure for the required monthly monitoring services.

4

19.     On or about March 24, 2015, Freeus and PNHC executed a Memo of Understanding ("MOU"), which set forth some, but not all, of the terms of the parties' Commissions Agreement.  The MOU stated that Freeus, in return for PNHC's assistance in negotiating Amendment Number Two to the August 28, 2013 Dealer Agreement, agreed to pay to PNHC a commission of $10.00 for every eResponder (2G) mPERS unit sold to Life Protect.  The MOU also acknowledged that Freeus would pay PNHC commissions on future sales of 3G mPERS products to Life Protect.

20.     The MOU also raised for the first time that Freeus would pay commissions to Medical Life Alarm/PNHC "for so long as LifeProtect 24/7 is purchasing devices governed by the terms of said Amendment Two[.]"  No such condition was raised or discussed by the parties prior to the introduction of the MOU.

21.     In order to induce Medical Life Alarm/PNHC to accept the condition that Freeus' payment of commissions to Medical Life Alarm/PNHC be tied to the second amendment, Mr. Garner, President of Freeus, specifically promised and represented to Justin Ortiz, President of Medical Life Alarm/PNHC, that Mr. Ortiz and Medical Life Alarm/PNHC would be involved with and included in all future negotiations and discussions between Freeus and Life Protect with regard to Freeus' supplying mPERS units to Life Protect.

22.     Medical Life Alarm/PNHC accepted the condition in direct reliance on Mr. Garner and Freeus' express promise that Medical Life Alarm/PNHC would be involved in all future discussions and negotiations between Freeus and Life Protect with regard to Freeus' supplying mPERS units to Life Protect.  Absent the express promise and representation of Mr. Garner and Freeus, Mr. Ortiz and Medical Life Alarm/PNHC would never have accepted the new condition or the MOU.

5

23. Upon information and belief, Mr. Garner and Freeus' promise and representation were false when made. Neither had any intention at that time of including Medical Life Alarm/PNHC or Mr. Ortiz in their future discussions and negotiations with Life Protect.

24. Thereafter, Life Protect purchased mPERS units (eResponder) from and paid the new monthly monitoring service fees to Freeus pursuant to the terms of the August 28, 2013 Dealer Agreement, as amended June 6, 2014 and March 19, 2015, and Freeus paid the commissions due to PNHC on those sales pursuant to the terms of the Commissions Agreement.

25. Freeus continued to pay PNHC the commissions due under the Commissions Agreement until September 2015. Although Life Protect purchased 3,000 eResponder mPERS units from Freeus in September 2015, and, therefore, PNHC was entitled to commissions of $30,000.00, Freeus only paid PNHC commissions of $5,000.00. That payment was made in October 2015.

26. When PNHC contacted Freeus to inquire why it only received $5,000.00 in commissions when $30,000.00 was properly due under the Commissions Agreement, Freeus informed PNHC that it had renegotiated its "deal" with Life Protect and, therefore, would no longer pay commissions to PNHC under the August 28, 2013 Dealer Agreement, as amended. Freeus also stated that since PNHC was not involved in the most recent negotiations with Life Protect, PNHC's services were no longer needed.

27. Sometime prior to September 1, 2015, Freeus entered into discussions with Life Protect seeking to restructure its deal with Life Protect in an attempt to escape its obligation to pay commissions to PNHC on Freeus' provision of mPERS units to Life Protect.

28. On or about September 1, 2015, Freeus entered into an "Equipment Lease Agreement" with Life Protect. In this agreement, Freeus attempted to change the nature of Life

6

Protect's acquisition of mPERS products from Freeus from a purchase to a lease of units. By entering into a new agreement that purportedly restructured the transactions between Freeus and Life Protect from purchase to lease, Freeus sought to escape its obligation to pay commissions to PNHC under the MOU.

29. The new agreement, however, is a "lease" in name only. At best, the agreement constitutes an installment sale rather than a lease of mPERS units. The agreement contains a provision which grants to Life Protect the option "to purchase the [mPERS units] at a price of $1 per Unit". Upon information and belief, Life Protect will and/or already has exercised its option to purchase at least some of the mPERS units it has obtained under the purported lease agreement.

30. Furthermore, the purported lease agreement does not supersede or replace the August 28, 2013 Dealer Agreement, as amended by Amendment Number One and Amendment Number Two. In fact, the purported lease agreement specifically invokes the Dealer Agreement and Amendment Number Two, stating that the payments called for under the purported lease agreement "are in addition to the [monitoring] service fees set forth in the Dealer Program Agreement between [Freeus] and [Life Protect] and any addendums thereto." The purported lease agreement does not alter the monthly service fee for the required monitoring services set out in Amendment Two to the Dealer Agreement. Thus, the mPERS units provided under the purported lease agreement are still governed by Amendment Number Two.

31. Despite its express agreement with PNHC that PNHC would be involved in all future negotiations between Freeus and Life Protect regarding the August 28, 2013 Dealer Agreement, Freeus intentionally excluded PNHC from the negotiations over the purported lease

7

agreement so that it could take the position that it was no longer obligated to pay commissions to PNHC on its supply of mPERS units to Life Protect.

32. Upon information and belief, Life Protect purchased 9,000 mPERS units from Freeus for the months of October, November and December 2015. Pursuant to the Commissions Agreement, PNHC is entitled to commissions of $90,000.00 on those sales. Freeus has failed and refused to pay PNHC commissions on its October, November and December sales of mPERS units to Life Protect.

33. Upon information and belief, Life Protect purchased approximately 9,000 mPERS units from Freeus for the months of January, February and March 2016. Pursuant to the Commissions Agreement, PNHC is entitled to commissions of approximately $90,000.00 on those sales. Freeus has failed and refused to pay PNHC commissions on its January, February and March sales of mPERS units to Life Protect.

34. As of the date of the filing of this action, upon information and belief, Freeus owes PNHC commissions well in excess of $200,000.00.

35. Upon information and belief, Freeus continues to sell 2G and 3G mPERS units to Life Protect governed by Amendment Number Two to the August 28, 2013 Dealer Agreement. Pursuant to the Commissions Agreement, PNHC is entitled to commissions on those sales. PNHC has demanded that Freeus pay the commissions duly earned by and owing to PNHC on the sale of mPERS units to Life Protect. Freeus has failed and refused to pay the commissions duly earned by and owing to PNHC on the sale of mPERS units to Life Protect.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

36. The allegations contained in Paragraph Nos. 1 through 35 above are re-alleged and incorporated by reference as if fully set forth herein.

8

37. As more fully set forth above, a valid and enforceable contract (the "Commissions Agreement") exists between PNHC and Freeus for the payment of commissions to PNHC on Freeus' sales of mPERS units to Life Protect.

38. PNHC and Freeus possessed the legal capacity to enter into and to be bound by the Commissions Agreement.

39. PNHC fully and completely performed its duties and obligations under the Commissions Agreement.

40. Freeus has sold mPERS units to Life Protect and, therefore, pursuant to the Commissions Agreement, currently owes commissions to PNHC on those sales. PNHC has made demand on Freeus for the payment of the commissions currently due and owing to PNHC under the Commissions Agreement.

41. Freeus has failed and refused to pay the commissions currently due and owing to PNHC under the Commissions Agreement.

42. Freeus' failure and refusal to pay to PNHC the amounts currently due and owing under the Commissions Agreement constitutes a breach of contract.

43. As a direct and proximate result of Freeus' breach of contract, PNHC has been damaged in an amount to be proven at trial, but in excess of $75,000.00.

**SECOND CLAIM FOR RELIEF**
**(Anticipatory Breach of Contract – Specific Performance)**

44. The allegations contained in Paragraph Nos. 1 through 43 above are re-alleged and incorporated by reference as if fully set forth herein.

9

45.     As more fully set forth above, a valid and enforceable contract (the "Commissions Agreement") exists between PNHC and Freeus for the payment of commissions to PNHC on Freeus' sales of mPERS units to Life Protect.

46.     PNHC and Freeus possessed the legal capacity to enter into and to be bound by the Commissions Agreement.

47.     PNHC fully and completely performed its duties and obligations under the Commissions Agreement.

48.     Freeus has sold and is continuing to sell mPERS units to Life Protect.  Pursuant to the Commissions Agreement, PNHC is entitled to receive commissions on all current and future sales of mPERS units (both 2G and 3G) to Life Protect.

49.     Freeus currently owes commissions to PNHC pursuant to the Commissions Agreement on past sales of mPERS units to Life Protect.  PNHC made demand on Freeus to pay commissions currently due and owing.  As of the date of the filing of this Verified Complaint, Freeus has failed and refused to pay those commissions to PNHC.

50.     In October 2015, Freeus informed PNHC that it would no longer pay commissions to PNHC for sales of mPERS units to Life Protect.  Specifically, Freeus stated that it had renegotiated its "deal" with Life Protect and, therefore, would no longer pay commissions to PNHC for sales of mPERS units under the August 28, 2013 Dealer Agreement, as amended.  Freeus also stated that since PNHC was not involved in those negotiations with Life Protect, PNHC's "services were no longer needed."

51.     PNHC demanded that Freeus properly and fully perform its obligations under the Commissions Agreement by paying all commissions that will become due on future sales of mPERS units to Life Protect.

10

52.     Despite PNHC's demand, Freeus has stated positively and unequivocally that it will not pay commissions to PNHC on future sales of mPERS units to Life Protect and, therefore, does not intend to perform its obligations under the Commissions Agreement with PNHC.  Freeus' conduct constitutes an anticipatory breach of the Commissions Agreement.

53.     PNHC has not breached, terminated or repudiated the Commissions Agreement and, with regard to future performance, does not accept Freeus' repudiation of that agreement.

54.     PNHC will suffer significant and irreparable damage and harm if Freeus fails to perform properly its future obligations under the Commissions Agreement.  Therefore, PNHC is entitled to the equitable relief of specific performance.

### THIRD CLAIM FOR RELIEF
#### (*Quantum Meruit*)

55.     The allegations contained in Paragraph Nos. 1 through 54 above are re-alleged and incorporated by reference as if fully set forth herein.

56.     As stated more fully above, PNHC provided services to Freeus in negotiating the terms and conditions of the August 28, 2013 Dealer Program Agreement, including Amendment Numbers One and Two, between Freeus and Life Protect for the sale of mPERS units to Life Protect.  PNHC did not provide those services gratuitously.

57.     Freeus knowingly and voluntarily accepted the services of PNHC in negotiating the terms and conditions of the August 28, 2013 Dealer Program Agreement, as amended, between Freeus and Life Protect for the sale of mPERS units to Life Protect.  Such services also included negotiations over the purchase price of Freeus' 3G mPERS units currently being sold to Life Protect.

58.     Freeus has continued to make sales of mPERS units to Life Protect under the August 28, 2013 Dealer Agreement, as amended, negotiated by PNHC.  Pursuant to the

11

Commissions Agreement, Freeus is required to pay commissions to PNHC on those sales of mPERS units to Life Protect.

59. If it is determined that there was no express contract between PNHC and Freeus for the payment of commissions to PNHC for Freeus' sales of mPERS units to Life Protect, then there was an implied contract between PNHC and Freeus for the services rendered by PNHC.

60. PNHC fully, completely and satisfactorily negotiated the terms and conditions of the contract between Freeus and Life Protect for the sale of mPERS units to Life Protect. Freeus and Life Protect executed, have performed and continue to perform under the contract negotiated by PNHC. PNHC fully and completely fulfilled its duties and obligations under the implied contract with Freeus.

61. PNHC has made demand on Freeus to pay to PNHC the reasonable value of the services provided to Freeus by PNHC. Freeus has refused.

62. Through the conduct alleged above, Freeus obtained money and other benefits from PNHC.

63. Given the nature of the alleged conduct and circumstances, it would be unjust to allow Freeus to retain the money and other benefits it obtained from PNHC.

64. PNHC is entitled to recover from Freeus the value of the services it rendered to Freeus, an amount in excess of $75,000.00, such amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

65. The allegations contained in Paragraph Nos. 1 through 64 above are re-alleged and incorporated by reference as if fully set forth herein.

66. Through the conduct alleged above, Freeus obtained money and other benefits from PNHC.

67. Given the nature of the alleged conduct and circumstances, it would be unjust to allow Freeus to retain the money and other benefits it obtained from PNHC.

68. PNHC is entitled to recover from Freeus the value of the unjust enrichment, an amount in excess of $75,000.00, such amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Fraud/Fraudulent Inducement)

69. The allegations contained in Paragraph Nos. 1 through 68 above are re-alleged and incorporated by reference as if fully set forth herein.

70. As more fully set forth above, Freeus, by and through its President, Josh Garner, purposely communicated materially false and/or misleading statements and representations to and/or concealed material information from PNHC concerning its intentions to pay commissions to PNHC and to include PNHC in Freeus' future discussions and negotiations with Life Protect with regard to Freeus' supplying mPERS units to Life Protect.

71. Freeus knew or reasonably should have known that the representations and/or concealments of material fact were false or that those representations and/or concealments of fact were made with reckless indifference as to their truth or falsity.

72. Freeus made those false representations and/or concealments of material fact with the intent to deceive PNHC, and, in fact, PNHC was deceived.

13

73. PNHC reasonably relied upon the false representations and/or omissions of material fact made by or for Freeus.

74. Freeus made those false representations and/or concealments of material fact with the specific intent to induce PNHC to enter into the MOU.

75. PNHC reasonably relied upon the false representations and/or concealments of material fact in entering into the MOU and accepting the terms and conditions contained therein.

76. As a direct and proximate result of Freeus' false representations and/or concealments of material fact, PNHC has been damaged in an amount in excess of $75,000.00.

## SIXTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

77. The allegations contained in Paragraph Nos. 1 through 76 above are re-alleged and incorporated by reference as if fully set forth herein.

78. The conduct of Freeus as specifically set forth above constitutes unfair and deceptive acts or practices in or affecting commerce within the State of North Carolina.

79. Freeus injured PNHC by reason of its unlawful conduct in violation of N.C. Gen. Stat. § 75-1.1 *et seq.* PNHC is entitled to recover from Freeus three times its actual damages, plus an award of reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Punitive Damages)

80. The allegations contained in Paragraph Nos. 1 through 79 above are re-alleged and incorporated by reference as if fully set forth herein.

81. Freeus' conduct as more fully set forth above was and could be nothing other than intentional, willful, wanton, and malicious.

82.     As a result, PNHC is entitled to recover punitive damages from Freeus as a result of Freeus' intentional, willful, wanton, and malicious acts and conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff PNHC, LLC prays the Court that:

1.      Judgment be entered in favor of PNHC and against Freeus;

2.      PNHC be awarded compensatory, consequential and punitive damages from Freeus in an amount to be proven at trial;

3.      Freeus be ordered to specifically perform its obligations under the Commissions Agreement;

4.      Award treble damages to PNHC and against Freeus pursuant to N.C. Gen. Stat. § 75-16;

5.      Award attorneys' fees to PNHC and against Freeus pursuant to N.C. Gen. Stat. §§ 75-16.1;

6.      A trial by jury on all issues so triable;

7.      The costs and expenses of this action, including reasonable attorneys' fees, be taxed against Freeus; and

8.      PNHC have and recover such other and further relief as the Court may deem just and proper.

15

This the 19th day of April, 2016.

**HARRIS SARRATT & HODGES, LLP**

By: /s/ Donald J. Harris
    Donald J. Harris, NCSB # 15902
    1620 Hillsborough Street, Suite 200
    Raleigh, North Carolina 27605
    Tel.:    919.546.8788
    Fax:    919.546.8789
    dharris@hshllp.com
    *Attorneys for Plaintiff PNHC, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this date the foregoing **FIRST AMENDED COMPLAINT** was

electronically filed with the CLERK OF COURT using the CM/ECF System, which will send

notification to all attorneys of record as follows:

F. Hill Allen
Tharrington Smith, LLP
P.O. Box 1151
Raleigh, North Carolina 27602
hallen@tharringtonsmith.com
*Attorney for Defendant*

Evan S. Strassberg
Michael Best & Friedrich, LLP
6995 Union Park Center, Suite 100
Midvale, Utah 84047
esstrassberg@michaelbest.com
*Attorney for Defendant*

This the 19th day of April, 2016.

HARRIS SARRATT & HODGES, LLP

By:  /s/ Donald J. Harris
     Donald J. Harris
     *Attorney for Plaintiff*

17